IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IRA DEAN STANLEY, | } | |
| TDCJ-CDI No.400371, | } | |
|     Petitioner, | } | |
| v. | } | CIVIL ACTION G-07-478 |
| NATHANIEL QUARTERMAN., | } | |
|     Respondent. | } | |

OPINION ON DISMISSAL

Petitioner Ira Dean Stanley, a state inmate proceeding *pro se*, seeks federal habeas relief from disciplinary conviction number 20070179680 for possession of marijuana. (Docket Entry No.1). As a result of such conviction, petitioner lost thirty days of commissary and recreation privileges and 365 days of good conduct credit; he was also reprimanded and had his class line status reduced. (Docket Entry No.12, Disciplinary Hearing Packet).

Respondent has filed a motion for summary judgment (Docket Entry No.11), to which petitioner filed a response. (Docket Entry No.14). For the reasons to follow, the Court will grant respondent's motion for summary judgment and dismiss this habeas action.

BACKGROUND

Petitioner contends that the following facts gave rise to the pending federal habeas action: On February 23, 2007, petitioner and about ten other inmates submitted urine samples to Sgt. Thibeaux to test for illegal drugs. (Docket Entry No.1). Thibeaux placed petitioner's unlabeled container on a sink in the restroom with other unlabeled containers. (*Id*.). While petitioner was in the restroom, Thibeaux argued with offender Emanuel Watson. Petitioner heard her order Watson to submit to the drug test. (*Id*.). Thibeaux then told petitioner to leave the restroom and to wait outside. (*Id*.). Petitioner complied but when he came back in, he heard

1

Watson tell Thibeaux that she was testing the wrong container.  Thibeaux told Watson "to shut up and get out of the restroom." (*Id*.).  Thibeaux then grabbed another urine container from the sink.  (*Id*.).  Petitioner told her that the sample in the container that she had grabbed did not look like his urine sample.  (*Id*.).  Thibeaux picked up a container and threw its contents in the toilet; she refused to listen to petitioner and refused to re-test him.  (*Id*.).  Thirty minutes later, petitioner was taken to solitary confinement, where he remained for eight days.  (*Id*.).

Petitioner was charged with use or possession of marijuana.  In preparation for his disciplinary hearing, petitioner told his counsel-substitute that he wanted to call the charging officer to question her about the possibility that she had tested the wrong container.  (*Id*.).  Counsel substitute, however, did not act on petitioner's request.  (*Id*.).

A disciplinary hearing was held on March 1, 2007.  The disciplinary hearing officer ("DHO") did not summon the charging officer; therefore, petitioner's only defense was a not-guilty plea.  (*Id*.).  Petitioner was found guilty of the offense based on the charging officer's offense report.  (*Id*.).

Petitioner filed a Step 1 grievance on March 12, 2007, alleging that Thibeaux did not follow TDCJ policies and rules with respect to the reliability and sufficiency of the test results in light of petitioner's medical history.  He also grieved that Thibeaux did not attend the disciplinary hearing.  (*Id*., attachment).  Petitioner further grieved that Thibeaux used the drug test as a form of harassment and that his punishment was excessive.  (*Id*.).  Petitioner sought to be re-tested because he believed that Thibeaux had switched his urine with that of another offender in the room.  (*Id*.).  The grievance was denied on grounds that no procedural errors were found, the punishment was within the guidelines, and no evidence was found that Thibeaux switched the urine sample with another offender's.  (*Id*.).

On March 13, 2007, the day after petitioner submitted his Step 1 grievance, offender Emanuel Watson confessed to petitioner that Thibeaux switched his urine sample with petitioner's sample. (Docket Entry No.1). On March 14, 2007, petitioner showed the DHO Watson's affidavit, in which he confessed to the same, but the DHO took no action.

Petitioner filed a Step 2 grievance on May 17, 2007, complaining that the case was not properly investigated, that Thibeaux did not follow procedures because she did not allow petitioner to submit another urine sample. He reiterated his belief that she had switched the samples. (*Id.*). He did not, however, mention Watson's affidavit or confession, although he stated that "two offenders . . . told me that she grabbed the wrong container when she told me mine was positive. They saw observe [sic] this outside the restroom window." (*Id.*). Petitioner indicated that he could get a list of witnesses to testify that Thibeaux lined up the containers in a row without putting the names of the offenders on the containers and that she relied on her memory. (*Id.*). The grievance was denied on July 26, 2007, on grounds that the evidence was sufficient to support the drug conviction and that there was no evidence to show that Thibeaux did not follow proper procedures. (*Id.*).

In the pending petition, petitioner contends his due process rights were violated as follows:

1. He was denied the right to question the accusing officer;

2. There was no evidence of petitioner's guilt because there was no evidence that the toxicology report was attributable to petitioner's urine specimen;

3. The DHO was not impartial; the DHO did not summon the charging officer and found petitioner guilty on the offense report alone;

4. Petitioner was denied the opportunity to prepare an adequate defense because he was confined in pre-hearing detention for eight days before the hearing and denied access to indigent supplies and legal materials;

5. He received ineffective assistance of counsel-substitute; and,

      6. TDCJ-CID violated its own policies and procedures.

(*Id.*).

Respondent moves for summary judgment on grounds that petitioner failed to exhaust his administrative remedies with respect to all claims except the claim regarding the violation of TDCJ policy and procedure. (Docket Entry No.11). Respondent also contends that petitioner fails to show that he has been deprived of a constitutional right. (*Id.*).

## ANALYSIS

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### A. Procedurally Barred Claims

A state inmate must exhaust all available state remedies before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b), (c). Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the

4

exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process. *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus. *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978); *see also Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies).

A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Moreover, an administrative grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.* at 522 (noting that "[i]n deciding how much detail is required in a given case . . . , a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally'"). Petitioner did not grieve that the DHO was not impartial,[1] that he was denied the right to question the charging officer because she was not summoned to the hearing,[2] that he was unable to prepare an adequate defense while confined in

---

[1] In his Step 1 grievance, petitioner complained that DHO did not use sound judgment in assessing his punishment because she did not consider evidence mitigating a severe punishment. (Docket Entry No.1).

[2] In his Step 1 grievance, petitioner complained that Thibeaux did not attend the disciplinary hearing "to testify that the testimony of the confidential information is believed to have been reliable." (Docket Entry No.1, attachment). In

5

pre-hearing detention; or that his counsel-substitute rendered constitutionally defective representation. Therefore, he has failed to exhaust these claims.

Respondent maintains that these claims are also procedurally barred because any attempt to exhaust such claims through the prison grievance system would be rejected as untimely. (Docket Entry No.11). When the petitioner's own procedural default leaves state remedies for a petitioner's claims unavailable, federal courts are barred from reviewing those claims. *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998). A petitioner, however, may overcome the procedural default bar if he "can demonstrate cause for the defaults and actual prejudice as a result of the alleged violation of federal law" or else show that "failure to consider the claims will result in a fundamental miscarriage of justice." *Morris v. Dretke*, 413 F.3d 484, 491-92 (5th Cir. 2005). "The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). To establish actual innocence, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Id.*

Petitioner has not shown "cause" under the "cause and prejudice" test necessary to allow the court to reach the merits of the claims despite the procedural bar. No external

---

his Step 2 grievance, petitioner complained that Thibeaux did not come to the hearing to testify concerning the facts of her reasonable suspicion after he requested her presence via his counsel-substitute. (*Id.*).

impediment prevented petitioner from properly raising and discussing these claims in his grievances. Absent a showing of "cause," it is unnecessary for this court to consider whether there is actual prejudice. *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996).

Petitioner, nevertheless, contends in his response to the motion for summary judgment that he exhausted his administrative remedies with respect to these claims because in both grievances he asserted a claim of actual innocence and because on August 20, 2007, after his grievances were denied, he sought Administrative Review from the Director and Executive Deputy Director of TDCJ-CID. (Docket Entry No.14). In his Administrative Review Request, petitioner sought a modification of punishment pursuant to Administrative Directive 04.35, which he claims provides for corrective action of a disciplinary action through an independent administrative review. (*Id*., attachment). Petitioner claimed in the Administrative Review Request that he was penalized by placement in prehearing detention for eight days prior to the disciplinary hearing and that his punishment was excessive for the offense. (*Id*.). In support of his excessive punishment argument, petitioner noted the following: "My whole argument has been that the specimen Thibeaux had wasn't mine and she intentionally or unintentionally switched my urine by relying on her memory with offender Emanuel Watson[,] the other offender [sic] in the restroom with me." (*Id*.). Petitioner's exhibit does not reflect whether or how TDCJ administrators addressed petitioner's Administrative Review Request. Moreover, petitioner has not attached a copy of Administrative Directive 04.35 or cited to any authority that would show that an Administrative Review Request is a necessary component of the grievance system in Texas prisons. Furthermore, the Court has not located any authority that would show the same. Without more, the Court concludes that petitioner has failed to exhaust his administrative remedies.

Furthermore, petitioner fails to support his allegation of actual innocence with new, reliable evidence that was not available to him during the grievance process. By petitioner's own account, he showed Watson's affidavit to the DHO the day after Watson confessed to the switched specimens and a couple of days before petitioner filed his Step 2 grievance. (Docket Entry No.1). Petitioner, however, did not mention Watson or his affidavit in his Step 2 grievance. (*Id.*, attachment). Moreover, as respondent observes, the reliability of Watson's affidavit is suspect. Offender Watson's signature on the Controlled Substance Testing Log, which he signed on the date that he and petitioner submitted urine samples, differs from his signature on the affidavit attached to petitioner's pleadings. (Docket Entries No.1, No.12, No.14). Accordingly, petitioner's claims with respect to the partiality of the DHO, his inability to confront the charging officer and to prepare an adequate defense, and the ineffectiveness of counsel-substitute are procedurally barred and subject to dismissal.

Even if these claims were not barred, petitioner would not be entitled to federal habeas relief. Because petitioner is eligible for mandatory supervision release, he has a protected liberty interest in his earned good-time credits. *See Teague v. Quarterman*, 482 F.3d 769, 776-77 (5th Cir. 2007). For this reason, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). The minimum amount of due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the

disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. *Superintendent, Mass. Correctional Institution*, 472 U.S. at 454.

Petitioner does not deny that he received advance notice of the charges against him. Likewise, petitioner does not dispute that he received a written statement of the fact finder, relating the evidence relied upon and the reasons for the decision. Petitioner complains that he was denied the right to question the charging officer because the officer was not summoned to the disciplinary hearing. A prisoner, however, has no general right to confront or cross-examine witnesses at a prison disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315, 322 n.5 (1976); *Wolff*, 418 U.S. at 567-68; *Broussard v. Johnson*, 253 F.3d 874, 876 (5th Cir. 2001). Furthermore, petitioner's disciplinary hearing records and the audio tape show that petitioner did not request witnesses or documentary evidence.[3] (Docket Entry No.12). Therefore, petitioner fails to show that he was denied a constitutionally protected interest because the charging officer

---

[3] The TDCJ Service Investigation Worksheet reflects that counsel-substitute was appointed upon petitioner's request and because he was confined in prehearing detention. (Docket Entry No.12). Petitioner was informed of his rights to call and question witnesses, to present documentary evidence, to be represented by counsel-substitute, and to call and question the charging officer at the hearing. (*Id*.). Petitioner indicated that he understood his rights and that he wished to attend the hearing. (*Id*.). Petitioner did not give a reason or a defense and did not request a witness or documentary evidence. (*Id*.).

The "TDCJ Disciplinary Hearing Report and Hearing Record" shows that petitioner received written notification of the disciplinary charge on February 27, 2007, several days before the March 1, 2007 hearing. (Docket Entry No.12). He did not offer any documentary evidence or request to call any witnesses. (*Id*.). The charging officer submitted an offense report indicating that petitioner tested positive for marijuana. (*Id*.). Petitioner told the investigating officer that he was going to give a statement to the hearing officer. (*Id*.).

The audio recording of the disciplinary hearing reflects the following: After the hearing officer read the charge against him, petitioner entered a plea of not guilty and indicated that he did not wish to make a statement. His counsel-substitute indicated that they would not be presenting any documentary evidence. The hearing officer read further facts regarding the drug sample testing and the results of such testing. Counsel substitute offered several reasons to mitigate punishment, if he were found guilty. The hearing officer found petitioner guilty and assessed punishment. (Docket Entry No.12, Disciplinary Tape).

Even if petitioner asked counsel-substitute to have the charging officer present at the hearing, as he indicates in his Step 2 grievance, he did not ask the DHO to call the charging officer to testify in person or by telephone. (*Id.*).

was not present for questioning. Moreover, petitioner does not show that the outcome of his hearing would have changed if the charging officer had testified in person. *See Banuelos v. McFarland*, 41 F.3d 232, 234-35 (5th Cir. 1995) (denying prisoner's due process claim that a disciplinary hearing officer failed to call defense witnesses where the testimony of such witnesses would not have changed the outcome of the hearing and thus the prisoner did not demonstrate prejudice).

To the extent that petitioner alleges that the DHO was biased or partial during the disciplinary hearing, the Court has reviewed the audiotape recording of the disciplinary hearing and finds that there is no evidence to support such allegation. Moreover, the record does not show that the hearing officer was predisposed to finding petitioner guilty, that the officer's finding of guilt was based on less than constitutionally sufficient evidence, or that the officer even behaved in less than a professional manner. Petitioner's complaint that the DHO was not impartial is simply frivolous.

Likewise, petitioner's claim regarding the ineffectiveness of his counsel-substitute is without merit. An inmate does not have a right to either retained or appointed counsel in a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976). Because an inmate has no constitutional right to the assistance of counsel substitute, he cannot claim a right to habeas relief based on counsel substitute's performance. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (holding no right to counsel, no deprivation of ineffective assistance).

Finally, petitioner's placement in pre-hearing detention in this case "did not present the type of atypical significant deprivation in which a state might conceivably create a liberty interest." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). Federal habeas corpus review is available only for the vindication of rights existing under federal law, not rights existing solely

under the rules of state procedure or, as applicable in this case, administrative procedure. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Moreover, petitioner was not denied the opportunity to prepare for the disciplinary hearing. Counsel-substitute was appointed to assist him in investigating the charge and preparing a defense.

Because the aforementioned claims are unexhausted and procedurally barred and because they are also without legal merit, they are subject to dismissal.

### B. Sufficiency of the Evidence to Support Disciplinary Conviction

Respondent also contends that petitioner failed to exhaust his administrative remedies with respect his claim that there was no evidence of petitioner's guilt because there was no evidence that the toxicology report was attributable to petitioner's urine sample. (Docket Entry No.11). Petitioner complained in his grievances that he believed that the urine samples were switched; such complaint implicitly raises a claim regarding the sufficiency of the evidence to support his disciplinary conviction, which prison officials addressed in their response to the grievance. Therefore, this claim is not subject to dismissal for non-exhaustion and will be addressed on the merits.

Federal habeas review of the sufficiency of the evidence to support a disciplinary conviction is extremely limited. Due process requires only "some evidence to support the findings made in the disciplinary hearing." *Superintendent, Mass. Correctional Institution*, 472 U.S. at 457. The Supreme Court has determined that "[a]scertaining whether [the sufficiency-of-evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455. "Determining the believability of the testimonies

presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 536-537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id.* at 537. "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard*, 253 F.3d at 877.

In this case, the DHO relied on the charging officer's offense report to find petitioner guilty of possession of marijuana. (Docket Entry No.12). The report showed that petitioner's urine sample twice tested positive for marijuana. (*Id.*). Although the "Controlled Substance Testing Log" kept by Sgt. Thibeaux shows that Watson signed the log immediately after petitioner, the Log does not show that the urine samples were switched. In fact, the disciplinary hearing report and the audio tape of the hearing are silent as to any challenge to the veracity of the offense report. Petitioner made no statements, called no witnesses, and presented no documentary evidence at the disciplinary hearing. Based on the offense report, the Court finds that petitioner's rights set forth in *Wolff* have not been abridged and that there was clearly some evidence in the record to support the DHO's decision in this case.

### C. TDCJ-CID Policy

To the extent that petitioner contends that Thibeaux or any other TDCJ-CID official failed to follow TDCJ-CID rules or policies with respect to the collection of urine samples, drug testing, pre-hearing confinement, the disciplinary hearing, or otherwise, his claims are not cognizable on federal habeas review. Failure to follow institutional rules and regulations, standing alone, does not constitute a violation of petitioner's due process rights. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994); *Myers*, 97 F.3d at 94.

### D. Sanctions not Implicating Due Process

To the extent that petitioner complains about the loss of commissary and recreation privileges, the reprimand, and the reduction of his class line status, such sanctions do not implicate a constitutionally protected liberty interest; therefore, any challenge to these sanctions fails to state a claim that is cognizable on federal habeas corpus review. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (finding limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life); *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir.2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995) (holding reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause). Absent an allegation that the petitioner has been deprived of some right secured to him by the United States Constitution or laws of the United States, federal habeas corpus relief is not available. *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir, 1995); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985).

To the extent that petitioner contends that his disciplinary conviction has thwarted his release on parole, such contention also fails. Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release. *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981). State prisoners in Texas "have no protected liberty interest in parole." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997).

Accordingly, respondent is entitled to summary judgment to the extent that petitioner complains of these sanctions.

III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

CONCLUSION

The Court finds that there is no genuine issue of material fact in this habeas action, and that the respondent is entitled to summary judgment as a matter of law. It is, therefore, ORDERED as follows:

1. Respondent's Motion for Summary Judgment (Docket Entry No.11) is GRANTED.

2. This petition is DISMISSED with prejudice.

3. A certification of appealability from this decision is DENIED.

4. All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of the Order to the parties.

SIGNED at Houston, Texas, this 10th day of June, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE